No. 16,505.

## LEDGERWOOD *v.* THE STATE.

| 184 | 81 |
| 133 | 698 |
| 184 | 81 |
| 141 | 516 |
| 134 | 81 |
| 149 | 413 |
| 149 | 613 |
| 149 | 706 |
| 134 | 81 |
| 159 | 250 |
| 159 | 251 |
| 134 | 81 |
| 169 | 182 |

CRIMINAL LAW.—*Arson.—Indictment.—Sufficiency to Withstand Motion in Arrest of Judgment.*—An indictment which, omitting the formal parts, reads as follows: "That Bazil Ledgerwood and Samuel Harbin, on the 7th day of October, 1891, at and in the county of Daviess, in the State of Indiana, did then and there unlawfully, willfully, maliciously and feloniously set on fire and attempt to burn down and destroy the county courthouse, situate in the city of Washington, in Daviess county, in the State of Indiana, which county courthouse was then and there the property of Daviess county, and then and there of the value of fifty thousand dollars," is sufficient in its statement of the facts constituting the offense, as defined by section 1927, R. S. 1881, as amended by the act of March 9, 1891, to withstand a motion in arrest of judgment.

SAME.—*Criminal Statute.—Failure to Define a Crime.—Not Invalid as Being in Conflict with Section 237, R. S. 1881.—Purpose of Section 237, R. S. 1881.—Section 237, R. S. 1881, not Repealed or Modified by Subsequent Enactments.—Cases Overruled.*—An act declaring what shall be a crime in this State is not invalid because it fails to define the crime, as being in conflict with section 237, R. S. 1881, which section reads as follows: "Crimes and misdemeanors shall be defined and punishment therefor fixed by the statutes of this State, and not otherwise." The intent of the language above quoted being to adopt a new and different system of criminal law, from that which had formerly prevailed, but not for the purpose of securing a more minute definition of crimes and misdemeanors than that afforded by the common law, and, therefore, section 237 is not invalid in the sense of attempting to bind future Legislatures; and the enactment afterwards of criminal statutes which did not specifically define the crimes designated therein did not repeal or modify the provision in question in said section 237. *Hood* v. *State*, 56 Ind. 263, and *Ardery* v. *State*, 56 Ind. 328, overruled.

SAME.—*Statute Construed.—Act of March 9, 1891, Relating to Arson.*—The act of March 9, 1891, relating to the crime of arson, is not invalid for indefiniteness.

SAME.—*Jurisdiction Over the Person.—Confinement in Jail to Await Action of Grand Jury.—Plea of Guilty.—Rendition of Judgment Deferred to Next Term.—Effect on Jurisdiction.*—Where an indictment is returned against the defendant, while he is confined in jail to an-

swer to such charge, and when he comes into court, and on being arraigned voluntarily pleads guilty to the indictment, the court has jurisdiction over the person of the defendant; and the fact that the rendition of judgment on the plea of guilty was deferred until the next term of court, does not affect the jurisdiction of the court in such case.

SAME.—*Jeopardy.—When Attaches.—When Waived.—Plea of Guilty.—Withdrawal of Plea.—Effect.*—Where a plea of guilty is entered and accepted by the court, jeopardy attaches as much as if there had been a trial by jury and a verdict of guilty returned; but when the defendant voluntarily withdraws his plea with the consent and permission of the court, he waives the defense of former jeopardy the same as he would by moving to set aside a verdict of guilty, and for a new trial.

SAME.—*Practice.—Allowing State to File Counter Affidavits and Motions.—When not Error.—Motion to Strike Out, and for Discharge.*—There is no error in permitting the State, in a criminal action, to file counter-affidavits and counter-motions to appellant's motion to strike out and for discharge, when the action of the court on these motions was fully justified without regard to the affidavits or counter-affidavits.

SAME.—*Punishment.—When not Excessive.*—Where, in a criminal action, the punishment inflicted is within the limits prescribed by the statutes, it can not be said to be excessive.

SAME.—*New Trial.—Motion for not Proper Under Plea of Guilty.*—A motion for a new trial was properly overruled where there had been no trial, as on a plea of guilty.

SAME.—*Statute Construed.—Common Law Crimes.—Nonexistence in this State.*—Section 237, R. S. 1881, providing that "crimes and misdemeanors shall be defined, and punishment therefor fixed by statutes of this State, and not otherwise," has not been repealed by subsequent acts, and consequently common law crimes do not exist in this State.

From the Daviess Circuit Court.

*T. M. Clarke, C. S. Dobbins* and *A. J. Padgett,* for appellant. *A. G. Smith,* Attorney-General, for the State.

McCABE, J.—The appellant was convicted by the circuit court on a plea of guilty on an indictment charging him and Samuel Harbin with arson, and each was sentenced to the State's prison for the period of seventeen years, and the court fined each of them one hundred dol-

lars, and rendered judgment accordingly. The appellant alone appeals.

The errors assigned are:

1 and 2. That the indictment does not state facts sufficient to constitute a public offense.

3. That the court had no jurisdiction of the subject.

4. That the court had no jurisdiction over the person of appellant.

5. That there was error in overruling appellant's motion to be discharged.

6. That there was error in permitting the State to file counter-motions and affidavits to appellant's motion for discharge.

7. That there was error in overruling the motion to strike out parts of said counter-affidavits.

8. That there was error in overruling appellant's motion in arrest of judgment.

9. That there was error in overruling appellant's motion for a new trial.

There were two counts in the indictment. Therefore, if either count was sufficient, there was no error in overruling the motion in arrest of judgment. *Bryant* v. *State*, 106 Ind. 549.

The first count reads as follows, omitting the formal part: "That Bazil Ledgerwood and Samuel Harbin, on the 7th day of October, 1891, at and in the county of Daviess, in the State of Indiana, did then and there unlawfully, wilfully, maliciously, and feloniously set on fire and attempt to burn down and destroy the county court-house, situate in the city of Washington, in Daviess county, in the State of Indiana, which county court-house was then and there the property of Daviess county, and then and there of the value of fifty thousand dollars."

We think this count is sufficient in its statement of the

Ledgerwood v. The State.

facts constituting the offense defined by section 1927, R. S. 1881, as amended by the act approved March 9th, 1891, to withstand a motion in arrest. Acts 1891, p. 402.

It is insisted by appellant's counsel that the latter act is invalid, because it does not define the crime of arson, and in support of that contention they cite the statute which provides that "Crimes and misdemeanors shall be defined and punishment therefor fixed by statutes of this State, and not otherwise." Section 237, R. S. 1881.

This statute was enacted in 1852 as the second section of an act entitled "An act declaring the law governing this State" approved May 31st, 1852. Section 605, 1 R. S. 1876. All that part of the act relating to what laws were in force, and especially that part adopting the English common law, with certain exceptions, had substantially been in force in this State before. Indeed, the English common law, with the exceptions mentioned, had been adopted in this state as far back as the year 1795 by the Governor and judges of the then Territory, and that provision was substantially reënacted by the Territorial Legislature in 1807, and has been substantially reënacted at every revision of our statute since that time. *Stevenson* v. *Cloud*, 5 Blackf. 92. But in the act of 1852, above referred to, the provision as to the definition of crimes and misdemeanors was added for the first time, it being the first provision of the kind ever adopted in this State.

In support of their construction of the statute above cited, appellant's counsel cite *Rosenbaum* v. *State*, 4 Ind. 599; *Smoot* v. *State*, 18 Ind. 18; *State* v. *President, etc., Ohio, etc., R. R. Co.*, 23 Ind. 362; *State* v. *Johnson*, 69 Ind. 85; *Stephens* v. *State*, 107 Ind. 185.

We have examined these cases, and find them not at

all in point, for reasons so obvious that further comment on them is unnecessary.

The appellant's attorneys further seek to support their contention by citing *Hackney* v. *State*, 8 Ind. 494; *Jennings* v. *State*, 16 Ind. 335, and *Marvin* v. *State*, 19 Ind. 181. It must be conceded that these cases all directly support appellant's contention, and hold that a statute that does not define a public offense with some degree of minuteness is void because not in conformity to the first statute above quoted. But these cases, and others like them, were all overruled by this court in *Wall* v. *State*, 23 Ind. 150. That case has been followed by an ununbroken line of decisions by this court until the present time. But the ground upon which FRAZER, Judge, speaking for the whole court, placed the decision in that case, has given rise to some confusion as to the real condition of our criminal code. That able jurist in that case said "That the Legislature can not in such a matter impose limits or restrictions upon its own future action, and that when two statutes are inconsistent, the last enactment stands as the law, are very plain propositions, which we presume will never be controverted. It follows that the act of May 31st, if in conflict with the act of June 10th (which was the date of the enactment of the criminal code of 1852), is so far repealed by the latter act. To hold that the Legislature may, by mere exercise of legislative power, say what a future Legislature may or may not do, would be but to declare that the whole legislative power of the government may be lawfully annihilated, and the government summarily brought to an end by the action of one of its departments."

While the principle thus announced was correct in the abstract, yet it was not applicable to the case, and did not furnish the true and real reason that made the conclusion reached in the case sound and good law. The court went

on to hold, that inasmuch as the statute above quoted was enacted before the criminal statute then in question was enacted, which it was complained did not define the crime sufficiently; that the last act, the criminal statute, in so far as it conflicted with the first, operated as a repeal of the statute above quoted.

As before stated, this decision has been followed by a large number of cases in which the same reason is given for the ruling, and, finally, in *Hood* v. *State,* 56 Ind. 263, and *Ardery* v. *State,* 56 Ind. 328, it was held that the section of the statute above quoted was repealed by the act creating crimes and misdemeanors. And though that section has not since been reënacted by the Legislature, and the decisions of this court in *Hood* v. *State, supra,* and *Ardery* v. *State, supra,* have not been overruled, this court has, in *Jones* v. *State,* 59 Ind. 229, and *Stephens* v. *State,* 107 Ind. 185, said of this section, that "That provision of law still continues in force." Other cases, perhaps, make the same declaration. How such a conclusion is reached neither of the learned judges, HOWK and NIBLACK, delivering the opinions, respectively, in those cases, tells us. The truth is, the long line of cases culminating in the two cases in 56 Ind., *supra,* not being overruled, and the statute therein held to be repealed, never having been reënacted, it is difficult to see how it still remained in force.

In the case in 107 Ind., *supra,* NIBLACK, J., cites in support of the opinion *Hackney* v. *State, supra,* which, as we have seen, had long before been overruled, and, as we now hold, correctly overruled. The inevitable result is, if the statute mentioned has been repealed, as this court held in the cases in 56 Ind., *supra,* it makes a great difference in our criminal law. With that statute repealed, instead of public offences being, as is generally supposed, of statutory creation exclusively, we have all common

law offences as well as those of statutory origin as parts of our criminal law.

Such a result as that, it is well understood, is very undesirable with the courts, the legal profession, and the people. This undesirable result has been brought about by assigning a wrong reason for a right decision, in *Wall* v. *State*, *supra*, and following that reason to its legitimate result, in the subsequent cases. The section of the statute in question was never intended, by the Legislature that enacted it, to place a restriction upon the action of future Legislatures, or even upon itself, as to the manner of defining crimes and misdemeanors. This is apparent when we take into consideration the history of the whole act in which this provision is found and the evils sought to be remedied by the provision.

As we have already seen, that part of the act adopting the English common law, which was enacted by the Governor and judges of the Indiana Territory in 1795, and reënacted in all the revisions of our statutes substantially as it now is, until 1852, and then for the first time the provision in question was added to that act. Prior to that time the common law as to crimes and misdemeanors was in force because it was so enacted by adopting the common law by the legislative authority of the State without exception or limitation as to crimes and misdemeanors. *State* v. *Bertheol*, 6 Blackf. 474.

It was undoubtedly the intention of the Legislature in 1852, by adding the provision under consideration to the act adopting the common law, to adopt a new and different system of criminal law from that which had formerly prevailed; it was the intention to modify the act adopting the common law so as not to adopt that part of it relating to crimes and misdemeanors. It was the evil of the common law as to criminal offences which were so great in number, and sometimes very shadowy and unsub-

stantial, imposing upon the people and the courts the necessity of wading through volumes of abstruse learning to ascertain what acts were criminal that the Legislature proposed to rid the people of. That could be, and was, accomplished by not adopting the common law as to crimes and misdemeanors. It was desirable and necessary to the public weal to adopt the common law as to other subjects. Therefore, the intention as to public offenses was made manifest and effectual by adding the provision to the act adopting the common law that "crimes and misdemeanors shall be defined, and punishment therefor fixed, by statutes of this State and not otherwise."

It was not for the purpose of securing a more minute definition of crimes and misdemeanors than the common law afforded, that this provision was added, but it was to get rid of common law offenses entirely by not adopting that part of the common law. If the common law had not been adopted at all, in whole or in part, the provision in question would have had no significance or force whatever. Because, if no part of the common law had been adopted, the provision in question would have been the law without being enacted. If there was no common law of any kind in force, crimes and misdemeanors must, of necessity, be defined and punishment therefor fixed by statutes of this State and not otherwise. Therefore, this provision was only made necessary to secure a purely statutory criminal code because of the adoption of the common law. This view of the provision relieves it from the charge that it sought to trammel future Legislatures, requiring of them any degree of minuteness in defining crimes; indeed, no act subsequent to that, however vague and general in its definition of public offenses, is at all inconsistent with that act; on the contrary, all such acts are in harmony with

it.  It has been held, and we think properly under that statute, that the crime may be designated by the statute without any definition, and the punishment fixed, and the courts would define the crime by the aid of common law definitions, and the general import of the language employed.  *Hedderich* v. *State*, 101 Ind. 564; *State* v. *Berdetta*, 73 Ind. 185.

We think, therefore, it was error to hold that the enactment of criminal statutes without specifically defining the crimes designated therein repealed the provision in question or even modified it.  And while a proper conclusion was reached in each of the two cases in 56 Ind., *supra*, and the cases leading up to them, yet they were placed on wrong grounds, and so far as they hold that the provision in question had been repealed or modified, they are overruled, and we adjudge that said provision is still in force, unrepealed and unmodified.  And, therefore, that we have no common law offenses in Indiana, and that the statute under which this prosecution is waged, which reads as follows: "whoever wilfully and maliciously burns or attempts to burn any dwelling-house or other building, finished or unfinished, occupied or unoccupied, whether the building be used or intended for a dwelling-house or any other purpose;" * * * "the property so burned or attempted to be burned, being of the value of twenty dollars or upwards, and being the property of another, * * * is guilty of arson, and upon the conviction thereof shall be imprisoned in the State prison not more than twenty-one years, nor less than one year, and fined not exceeding double the value of the property burned, * * * " is not invalid for indefiniteness.

The next question is, had the circuit court jurisdiction over the subject and person of the defendant?  No reason is suggested in appellant's brief why the court had not jurisdiction over the subject, and we know of none.

The jurisdiction over the person of appellant would seem to be complete on the return of an indictment against appellant, while he was confined in jail to answer to such charge, and especially when he comes into court, and, on being arraigned, voluntarily pleads guilty to that indictment, all of which is shown by the record.

It is insisted, however, that as the court deferred the rendition of judgment, after the plea of guilty, until the next term, that the court thereby lost jurisdiction over the defendant. It has been held that such delay does not defeat the jurisdiction. *Smith* v. *Hess, Sheriff*, 91 Ind. 424; *Gray* v. *State*, 107 Ind. 177; *Shaffer* v. *State*, 100 Ind. 365.

The jurisdiction was not lost by such delay.

The next question is whether the trial court rightly overruled appellant's motion to be discharged notwithstanding his plea of guilty. The record shows that previous to the return of the indictment appellant had plead guilty to the same charge as that in the indictment, in an information founded on an affidavit, against the same defendants and one James C. Lavelle, and that to said information a *nolle prosequi* was entered by the prosecuting attorney, with the consent of the court, after the plea of guilty to said information had been withdrawn by appellant with the consent and permission of the court.

When a plea of guilty is entered and is accepted by the court, jeopardy attaches as much as if there had been a trial by jury and a verdict of guilty returned. *Boswell* v. *State*, 111 Ind. 47. But when the defendant voluntarily withdraws his plea with the consent and permission of the court, as appellant did in this case, he waives the defense of former jeopardy precisely the same as he would by moving to set aside a verdict of guilty and for a new trial, where there had been a trial and verdict of guilty.

Ledgerwood *v.* The State.

It is also contended that the motion for discharge ought to have been sustained, because appellant was discharged from the first prosecution that he might testify against others for the same offense. See section 1804, R. S. 1881.

But the record does not show that he was discharged for that purpose; indeed, it shows that he was not discharged at all, but was remanded to the custody of the sheriff to await the action of the grand jury.

The other errors are waived by failing to argue them in appellant's brief; but we do not think there was any error in permitting the State to file counter-affidavits and counter-motion to appellant's motion to strike out and for discharge, because the action of the court on these motions was fully justified by the record, without regard to the counter-affidavits, or, indeed, to any of the affidavits.

It is also urged as a reason for reversal that the punishment assessed is excessive. The punishment is within the limits prescribed by the statute, and we can not say that it is excessive. *McCulley* v. *State*, 62 Ind. 428; *Murphy* v. *State*, 97 Ind. 579.

The motion for a new trial was properly overruled, because there had been no trial, and a new trial can only be granted where there has been a trial. We find no error in the record therefore.

The judgment is affirmed.

Filed Feb. 23, 1893.